**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Joel Rubinstein,

                Plaintiff,

   v.

SAP AG, et al.,

                Defendants.

                                     /

NO. C 11-06134 JW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

### I. INTRODUCTION

Joel Rubinstein ("Plaintiff") brings this diversity action against SAP AG and SAP America, Inc. (collectively, "Defendants") alleging, *inter alia*, breach of employment contract, discrimination on the basis of age and religion, and promissory fraud. Plaintiff alleges that Defendants violated the parties' employment agreement by terminating him without good cause, and that Defendants were motivated to do so by Plaintiff's age and religion.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint.[1] The Court finds it appropriate to take the Motion under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

---

[1] (Defendants' Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Amended Complaint, hereafter, "Motion," Docket Item No. 24.)

**II.  BACKGROUND**

**A.**     **Factual Allegations**

In a First Amended Complaint[2] filed on January 17, 2012, Plaintiff alleges as follows:

Defendant SAP AG is a German corporation with its principal place of business in Walldorf, Germany.  (FAC ¶ 2.)  Defendant SAP America is a Delaware corporation with its principal place of business in Newtown Square, Pennsylvania and an office in Palo Alto, California.  (Id. ¶ 3.)  Defendant SAP America is a wholly owned subsidiary of Defendant SAP AG.  (Id.)

In December 2005, Plaintiff was hired by Defendant SAP America to work as a Senior Contract Specialist in its contracts department in Palo Alto.  (FAC ¶ 13.)  In June 2007, Plaintiff received a promotion from the contracts department to the legal department.  (Id.)  On March 30, 2010, Plaintiff's employment was terminated by SAP America.  (Id. ¶ 14.)

Throughout Plaintiff's employment with Defendant SAP America, there existed an implied employment agreement between Plaintiff and Defendant SAP America.  (FAC ¶ 30.)  The implied agreement provided, *inter alia*, that Plaintiff was entitled to indefinite employment so long as he performed his duties competently, and that he could only be terminated for good cause.  (Id.)  This agreement was based on SAP America's personnel policies as well as Plaintiff's communications with his superiors and other company officials.  (Id. ¶ 31.)  Defendants breached this agreement by terminating Plaintiff without good cause.  (Id. ¶ 34.)

Around June of 2007, Assistant General Counsel Robert Dillon ("Dillon") began making promises to Plaintiff that he would be promoted to Assistant General Counsel of SAP America.  (FAC ¶ 17.)  This promise was falsely reiterated multiple times by multiple a number of Plaintiff's supervisors between June 2007 and January 2009.  (Id. ¶¶ 17-21.)

_____

[2] (Amended Complaint for Damages for Wrongful Termination, hereafter, "FAC," Docket Item No. 21.)

2

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Plaintiff believed the promises to be true and relied on them by not seeking other employment.  (Id. ¶ 22.)

Plaintiff was 47 years old at the time of his termination.  (FAC ¶ 42.)  Within SAP America's legal department, Plaintiff and other employees over the age of 40 were routinely passed over for promotions, while younger employees with less experience were promoted to positions for which Plaintiff was qualified.  (Id. ¶ 46.)  Plaintiff's age was a factor in Defendant SAP America's decision to terminate his employment.  (Id. ¶ 47.)

Plaintiff's termination was also based on religious discrimination.  (FAC ¶ 59.) Plaintiff was the only Jewish member of the SAP America legal department, and SAP America's legal personnel made derogatory remarks to Plaintiff about Jewish people.  (Id.) Plaintiff was coerced into making a public appearance at a Holocaust-related film sponsored by an SAP co-founder, whose father was a Nazi officer, in order to help rehabilitate the founder's and the company's image.  (Id.)  Plaintiff's superiors were resistant to approve Plaintiff's requests for time off for religious holidays, and made inappropriate comments regarding Plaintiff's religious convictions when asked to do so.  (Id. ¶ 54.)

Plaintiff discussed filing a religious discrimination complaint with Jill Alden ("Alden"), an SAP human resources professional.  (FAC ¶ 39.)  Because Alden worked for the human resources department, Plaintiff believed that all conversations with her would be confidential.  (Id.)  Nonetheless, Alden informed Benton that Plaintiff was considering filing a complaint.  (Id.)  Defendants subsequently retaliated against Plaintiff by terminating his employment.  (Id. ¶ 65.)

On the basis of the allegations outlined above, Plaintiff alleges seven causes of action: (1) Promissory Fraud; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Age Discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940 *et seq.*; (5) Religious Discrimination in violation of FEHA;

3

(6) Retaliation for Protected Activity under FEHA; and (7) Failure to Make Reasonable Accommodations for Religious Beliefs.[3]

**B.    Procedural History**

On November 7, 2011, Plaintiff filed his initial Complaint in Santa Clara County Superior Court. (See Docket Item No. 1-2.) On December 6, 2011, Defendants removed the action based on the complete diversity of the parties. (See Docket Item No. 1.) On December 12, 2011, Magistrate Judge Grewal recused himself from the matter. (See Docket Item No. 10.) On December 13, 2011, the case was reassigned to Chief Judge Ware pursuant to an August 2, 2011 Order of the Executive Committee. (See Docket Item No. 11.)

On December 13, 2011, Defendants moved to dismiss Plaintiff's claims. (See Docket Item No. 12.) On January 17, 2012, rather than responding to Defendants' Motion, Plaintiff filed an Amended Complaint. (See FAC.) On February 1, 2012, the Court issued an order finding good cause to accept Plaintiff's Amended Complaint even though it was not filed in compliance with Fed. R. Civ. P. 15, and denied as moot Defendants' Motion to Dismiss. (See Docket Item No. 22.)

Presently before the Court is Defendants' Motion to Dismiss.

## III.  STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v.

---

[3] Plaintiff initially alleged a claim for False Light Invasion of Privacy, but this claim was dismissed pursuant to a joint stipulation by the parties. (See Docket Item No. 30.) In the same stipulation, Plaintiff also dismissed all claims against SAP LABS, LLC, which had also been originally named as a Defendant. (See id.)

4

United States District Court
For the Northern District of California

City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

**IV. DISCUSSION**

Defendants move to dismiss Plaintiff's First, Second, Third, and Sixth Causes of Action, as well as all claims against Defendant SAP AG, on the grounds that: (1) Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory fraud are precluded by Plaintiff's status as an at-will employee; (2) Plaintiff's claim for retaliation must fail because his Complaint establishes that Plaintiff was terminated prior to engaging in any protected conduct; and (3) Plaintiff has failed to allege any facts that would establish the liability of SAP AG, parent company to SAP America, given that SAP AG was never Plaintiff's employer. (Motion at 3-9.)  Plaintiff responds that: (1) he was not an at-will employee because he had an implied contract requiring that he only be fired for cause; (2) the Complaint adequately alleges that protected conduct

5

led to Plaintiff's termination in support of his retaliation claim; and (3) the involvement of an SAP AG board member and employee in the affairs of SAP America establishes SAP AG's direct liability for Plaintiff's injuries.[4]

**A.      Second Cause of Action:  Breach of Contract**

At issue is whether Plaintiff has adequately alleged a cause of action for breach of contract.

"There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal. App. 4th 620, 630 (Cal. Ct. App. 1995) (citation omitted).  Thus, a "clear and unambiguous at-will provision in a written employment contract, signed by the employee, cannot be overcome by evidence of a prior or contemporaneous implied-in-fact contract requiring good cause for termination." Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 389 (2006) (citation omitted); see also Anderson v. Savin Corp., 206 Cal. App. 3d 356, 364 (Cal. Ct. App. 1988).  Thus, evidence of an implied agreement that is inconsistent with an at-will provision in a written employment agreement is inadmissible in determining the terms of the contract.  See Anderson, 206 Cal. App. 3d at 364.

Here, Plaintiff alleges that he had an implied contract for ongoing employment under which he could only be terminated for cause.  In support of this contention, Plaintiff alleges in pertinent part:

> During the entire course of [Plaintiff's] employment with SAP America, there existed an implied-in-fact employment contract between [Plaintiff] and SAP America that, at the time of [Plaintiff's] discharge included, but was not limited to, the following terms and conditions: (a) [Plaintiff] would be able to continue his employment with SAP America indefinitely, so long as he carried out his duties in a proper and competent manner; and (b) [Plaintiff] would not be demoted, discharged, or otherwise disciplined, nor would [Plaintiff's] job functions be reassigned for other than good cause with notice thereof.  (FAC ¶ 30.)  The above-described employment contract was evidenced by various written documents, commendations, pay increases, bonuses, oral representations made to [Plaintiff] by [supervisors] and other SAP America employees, and the parties' entire course of conduct.  (Id. ¶ 31.)  Throughout his employment, [Plaintiff] was told by his superiors, orally and in writing, that his performance exceeded expectations.  (Id.)  As a result of the above recognition and representations, [Plaintiff] reasonably came to expect and to rely on the promise of job security.  (Id.)

---

[4]  (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint at 7-15, hereafter, "Opp'n," Docket Item No. 32.)

6

Plaintiff does not dispute, however, that he signed the following documents as part of his employment with Defendant SAP America:

> (1) An offer of employment letter, dated November 30, 2005, which states "Employment at SAP America, Inc. is on at 'at will' basis, which means that either party may terminate the employment relationship at any time for any reason."[5]

> (2) An offer of promotion, signed by Plaintiff in May of 2007, which states, "I accept this promotion offer and acknowledge the terms above as well as the fact that this offer does not constitute a contract of employment and my SAP employment remains 'at will.'"[6]

Based on the allegations above, as well as the written documentation provided by Plaintiff, the Court finds that Plaintiff's allegations of an implied contract are precluded by his written agreement to at-will employment. Both Plaintiff's offer of employment and his offer of a promotion make clear that Plaintiff's employment with SAP America would be at-will, and that either party could terminate the employment relationship at any time.[7] Because the express term is controlling, Plaintiff's breach of contract claim based on termination without cause in violation of an alleged implied contract must fail.[8]

Plaintiff contends that the documents he signed cannot form the basis of any express agreement, because both contain language stating that they do "not constitute a contract of employment." (Opp'n at 8.) The Court finds, however, that this contention is misguided, insofar as the caselaw cited by Plaintiff is inapposite. First, in Dore, the court found that an offer of employment in the form of an offer letter was an express agreement between the parties,[9] thus precluding the argument that a document must be labeled as a contract to represent the parties' agreement. Second, the Reed case involves a mere *application* for employment, which the court

---

[5] (See Declaration of Joel Rubinstein in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint, hereafter, "Rubinstein Decl.," Ex. A, Offer of Employment Letter, hereafter, "Employment Offer," Docket Item No. 32-1.)

[6] (See Rubinstein Decl., Ex. B, Confirmation of Promotion, hereafter, "Promotion Acceptance," Docket Item No. 32-1.)

[7] (See Employment Offer; Promotion Acceptance.)

[8] See Camp, 35 Cal. App. 4th at 630.

[9] See Dore, 39 Cal. 4th at 392.

7

United States District Court
For the Northern District of California

found cannot represent the parties' employment agreement.[10]  Here, Plaintiff's offer letter expressly provides that he "accept[s] the terms and conditions of [the] offer letter,"[11] one of which was at-will employment.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Plaintiff's Second Cause of Action.  Because the documents[12] provided by Plaintiff demonstrate unambiguously that he was an at-will employee, the Court finds that allowing amendment as to Plaintiff's Breach of Contract claim would be futile.  Accordingly, the Court DISMISSES this claim with prejudice.

**B.     Third Cause of Action:  Implied Covenant of Good Faith and Fair Dealing**

At issue is whether Plaintiff has adequately alleged a violation of the implied covenant of good faith and fair dealing.

"[T]he covenant of good faith and fair dealing cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract." Halvorsen v. Aramark Uniform Servs., Inc., 65 Cal. App. 4th 1383, 1390 (Cal. Ct. App. 1998) (internal quotations and citation omitted).  For that reason, when an employee's written contract is unambiguously at-will, the employee cannot maintain a cause of action for breach of the implied covenant of good faith and fair dealing based on the claim that he was fired without cause. See id.

Here, as discussed above, the Court has found that Plaintiff expressly agreed to at-will employment which could be terminated by either party at any time.  Thus, in seeking to challenge his termination without cause, Plaintiff is in effect seeking to use the implied covenant of good faith to eliminate a term of the express agreement reached by the parties. See Halvorsen, 65 Cal. App. 4th at 1390.  The Court finds, however, that under Guz and Halvorsen, such a claim is clearly invalid.

---

[10]  (See Opp'n at 8 (citing Reid v. SmithKline Beecham Corp., 366 F. Supp. 2d 989 (S.D. Cal. 2005).)

[11]  (See Employment Offer.)

[12]  "[W]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [is] proper without converting the motion to one for summary judgment." Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (internal citations omitted).

United States District Court
For the Northern District of California

Accordingly, the Court GRANTS Defendants' Motion as to Plaintiff's Third Cause of Action. For the reasons discussed above with regards to Plaintiff's Breach of Contract Claim, the Court finds that allowing amendment as to this claim would be futile, and DISMISSES the claim with prejudice.

## C.    First Cause of Action:  Promissory Fraud

At issue is whether Plaintiff has adequately alleged a cause of action for promissory fraud.

In California, the elements of promissory fraud are: "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promisee." Behnke v. State Farm Gen. Ins. Co., 196 Cal. App. 4th 1443, 1453 (Cal. Ct. App. 2011) (citation omitted). Thus, a party can only succeed on a promissory fraud claim if their reliance on the false promise is reasonable, i.e., "justifiable". See Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478, 510 (Cal. Ct. App. 1998). When an employee has signed an employment agreement containing an at-will provision, the employee's "reliance on [an employer's] oral promises of continuing employment is simply not justifiable." Slivinsky v. Watkins–Johnson Co., 221 Cal. App. 3d 799, 807 (Cal. Ct. App. 1990).

Here, Plaintiff alleges in pertinent part:

From in or about June 2007 through December 2008, [Dillon], in his then managerial and supervisory capacities, on behalf of SAP America, made false written and verbal promises to [Plaintiff] that he would be promoted to Assistant General Counsel of SAP America prior to the end of the 2008 calendar year. (FAC ¶ 17.) In or about January 2009, in her managerial and then supervisory capacities on behalf of SAP America, [Senior Vice President and General Counsel Mary Beth] Hanss made false promises to [Plaintiff] that he would be promoted to Assistant General Counsel of SAP America. (Id. ¶19.) In or about mid-January 2009, Benton, in his then managerial and supervisory capacities, on behalf of SAP America, made a false promise to [Plaintiff] that he would be promoted to Assistant General Counsel of SAP. (Id. ¶ 21.) Specifically, Benton initially confirmed Hanss' and Dillon's promises to [Plaintiff] that the anticipated promotion "could even take up to six months." (Id.) [Plaintiff] was ignorant of the falsity of the Supervisors' promises when they were made and believed them to be true. (Id. ¶ 22.) In reliance on them, he remained employed within SAP America's Legal Department. (Id.)

9

Since the elements of a claim for promissory fraud are conjunctive, the Court need only address a few deficiencies in the Complaint as to this claim. First, based on the allegations above and the fact that Plaintiff was an at-will employee, the Court finds that Plaintiff has not adequately alleged that he justifiedly relied on the various representations made to him throughout his employment. Second, the Complaint is devoid of allegations that: (1) any of Plaintiff's supervisors had the requisite intent not to perform the alleged promise at the time it was made; or (2) any of those supervisors intended either to deceive Plaintiff or to induce him into continuing his employment with SAP America.

Further, while the lack of reasonable reliance alone provides a sufficient ground for dismissal of Plaintiff's promissory fraud claim, the Court observes that the lack of consistency in pleading as to this claim between Plaintiff's original Complaint and his Amended Complaint could provide an independent basis for dismissal of the claim. In his original Complaint, Plaintiff pleaded that he was informed "multiple times later in 2009 that the anticipated promotion would not occur in the near future." (See ¶ 19 of Docket Item No. 1-2 (emphasis added).) This allegation undermines Plaintiff's reliance claim, insofar as it indicates that he continued to work at SAP America even after being told that he would not be promoted.[13] In his Amended Complaint, by contrast, Plaintiff alleges that he was informed "multiple times later in 2009 that the anticipated promotion would occur in the near future." (FAC ¶ 23 (emphasis added).) Should Plaintiff choose to amend his Complaint as to the promissory fraud claim, this inconsistency should be explained to the Court.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Plaintiff's First Cause of Action with leave to amend.

---

[13] See Rochlis v. Walt Disney Co., 19 Cal. App. 4th 201, 215 (Cal. Ct. App. 1993), disapproved on other grounds in Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251 (1994) (finding that employee who was misled regarding employment conditions but continued working for company after learning true conditions could not satisfy reliance element of promissory fraud claim).

10

United States District Court
For the Northern District of California

**D.      Sixth Cause of Action:  Retaliation**

At issue is whether Plaintiff has adequately alleged a claim for retaliation under California's Fair Employment and Housing Act ("FEHA").

California Government Code Section 12940 "prohibits an employer from terminating any employee, including at-will employees, for attempting to comply with its provisions forbidding racial, sexual, or other forms of job harassment."  Flait v. N. Am. Watch Corp., 3 Cal. App. 4th 467, 475 (Cal. Ct. App. 1992).  Lawsuits claiming retaliatory employment termination in violation of FEHA are analogous to Title VII claims, and are "evaluated under federal law interpreting Title VII cases."  See id. at 475-76.  An employee bringing suit under FEHA must show that he was engaged in protected activity under the Act, that he was thereafter "subjected to adverse employment action," and a causal connection between the two.  See id. at 476 (citing Wrighten v. Metro. Hosps., Inc., 726 F.2d 1346, 1354 (9th Cir. 1984)).  Protected activity is defined to include opposing any practice prohibited under the act, or filing a complaint, testifying, or assisting in any proceeding under FEHA.  See Cal. Gov't Code § 12940(h).

Here, in Plaintiff's Fourth, Fifth and Seventh Causes of Action, which Defendants have not moved to dismiss, Plaintiff alleges various acts of age and religious discrimination by his superiors over the course of his employment.[14]  In support of his retaliation claim, Plaintiff alleges in pertinent part:

> [A]s a consequence of the disclosure or reporting of the above- and below-described actions to SAP management or Human Resources personnel, SAP America and SAP AG retaliated against [Plaintiff] by terminating him and subjecting him to intimidation, humiliation, and harassment.  (FAC ¶ 65.)  Throughout the last few days of his employment with SAP America, [Plaintiff] discussed with Alden his desire to file a complaint with Human Resources regarding Benton's religious discrimination of [Plaintiff] [sic], in that Benton failed and refused to make an attempt to reasonably accommodate [Plaintiff's] request to use accrued vacation days to travel to Israel with a group from his synagogue led by the congregation's rabbi, for "religious and cultural" purposes.  (Id. ¶ 39.)  Since Alden [sic] was [Plaintiff's] designated "HR Business Partner," he believed that confidentiality of their conversation would be maintained.  (Id.)  Alden wrongfully communicated [Plaintiff's] concerns to Benton just days prior to [Plaintiff's] termination and before a discrimination claim could be made.  (Id.)

---

[14]  (See FAC ¶¶ 41-63, 69-88.)

11

United States District Court
For the Northern District of California

Based on the allegations above, the Court finds that Plaintiff has adequately pleaded a cause of action for retaliation.  In particular, since Plaintiff alleges that he told an employee of the human resources department of his desire to file a complaint regarding his supervisor's religious discrimination, the Court finds that this qualifies as "opposing" religious discrimination under FEHA, regardless of the fact that Plaintiff was terminated before he filed a formal complaint.[15]  In addition, Plaintiff alleges that his supervisor was made aware of his intention to file a complaint, and that his termination occurred shortly thereafter.  (FAC ¶ 39.)  For purposes of a motion to dismiss, causation may be established by alleging both the employer's knowledge of the protected activity and proximity in time between the activity and the allegedly retaliatory action.[16]  Thus, the Court finds that Plaintiff has adequately stated a claim for retaliation under FEHA.

Accordingly, the Court DENIES Defendants' Motion as to Plaintiff's Sixth Cause of Action.

**E.     Claims Against SAP AG**

At issue is whether Plaintiff has adequately alleged any claims against Defendant SAP AG, in light of the fact that SAP America, and not SAP AG, was Plaintiff's employer.

"An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law." Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737 (Cal. Ct. App. 1998), disagreed with on other grounds by Reid v. Google, Inc., 50 Cal 4th 512, 524 (2010).  "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." Id.  In determining whether two corporations should be considered a common employer for Title VII purposes, courts have developed what is commonly known as the "integrated enterprise test," which considers the interrelation of operations, common management, centralized control of labor

---

[15]   See Cal. Fair Emp't and Hous. Comm'n v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1019 (Cal. Ct. App. 2004) ("Threatening to file a discrimination complaint is a protected activity.").

[16]   See Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (Cal. Ct. App. 2000).

relations, and common ownership or financial control. See id. (citations omitted). "[C]ommon ownership or control alone is never enough to establish parent liability." Id. at 738.

Here, as to the liability of SAP AG, Plaintiff alleges in pertinent part:

> At all material times, through its 100% ownership of SAP America, SAP AG had both the right and the authority to control and manage the actions of both SAP America and SAP LABS. (FAC ¶ 8.) At all material times, each of the [D]efendants, including Does 1 through 20, was the officer, director, agent, servant, employee, partner, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities and, in doing the things alleged, each was acting with the scope of such office, board, agency, service, employment, partnership, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others. (Id. ¶ 9.) SAP AG Board Member, Chief Human Resources Officer and Labor Relations Director Werner Brandt ("Brandt"), who, at all material times hereto, assumed responsibility over all SAP America employees, including SAP America's Legal Department, and personally assured [Plaintiff] and other SAP personnel that SAP failures or refusals to promote or reward SAP worthy [sic] employees would be thoroughly investigated and rectified by Brandt personally and in a confidential manner. (Id. ¶ 31.) [Plaintiff] in good faith relied on these representations and believed them to be true. (Id.)

Based on the allegations outlined above, the Court finds that Plaintiff has failed to state a claim against Defendant SAP AG. Although Plaintiff alleges that Defendant SAP AG had the right and authority to manage and control the affairs of SAP America, such a cursory allegation is insufficient. The only other pertinent allegation in the Amended Complaint is the allegation that Defendant SAP AG has "100% ownership" of Defendant SAP America. (FAC ¶ 8.) However, even taking this allegation as true, such complete ownership does not establish one entity's control over another, as discussed above. Further, the only conduct that any employee of Defendant SAP AG is alleged to have engaged in is Brandt's alleged wrongful forwarding of a "confidential" e-mail from Plaintiff. (Id. ¶ 34.) However, the Court is unaware of any authority for the proposition that the mere act of forwarding an e-mail, in the absence of allegations of discriminatory intent or an adverse employment action undertaken by the person forwarding the e-mail, is sufficient to support the claims brought by Plaintiff against Brandt's employer, Defendant SAP AG. Thus, the Court finds that Plaintiff has failed to adequately allege any claims against Defendant SAP AG.

Accordingly, the Court GRANTS Defendants' Motion as to all claims against Defendant SAP AG with leave to amend.

13

**United States District Court**

For the Northern District of California

### V.  CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss as follows:

(1)      The Second and Third Causes of Action are DISMISSED with prejudice;

(2)      The First Cause of Action is DISMISSED with leave to amend;

(3)      All claims against Defendant SAP AG are DISMISSED with leave to amend;

(4)      Defendants' Motion as to the Sixth Cause of Action is DENIED.

On or before **March 16, 2012**, Plaintiff shall file an Amended Complaint, consistent with the terms of this Order, if so desire.[17]

Dated:  March 1, 2012

JAMES WARE
United States District Chief Judge

---

[17]  In light of this Order, the Court DENIES as moot the parties' Stipulation to Reschedule Hearing.  (See Docket Item No. 31.)

14

**United States District Court**

For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

David L. Braverman dbraver@braverlaw.com
Jennifer Ann Lockhart jlockhart@morganlewis.com
Melinda S. Riechert mriechert@morganlewis.com
Michael David Schlemmer mschlemmer@morganlewis.com

**Dated:  March 1, 2012**                              **Richard W. Wieking, Clerk**


**By:____/s/ JW Chambers_____**
          **Susan Imbriani**
          **Courtroom Deputy**

15